IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE,
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| RICHARDS AVIATION, Inc., a Tennessee Corporation, <br><br> Plaintiff, <br><br> v. <br><br> HARRY BERNARD BOLDT, Jr. and B2 AVIATION LLC, a dissolved Indiana limited-liability company, <br><br> Defendants. | Case No. 2:19-cv-2259-JTF-dkv <br><br> **JURY DEMAND** |

## COMPLAINT FOR DAMAGES

The Plaintiff, Richards Aviation, Inc. now comes before this Honorable United States District Court and files this Complaint against the Defendant, Harry Bernard Boldt, Jr., and as cause for the same, does state and allege as follows.

### NATURE OF THE ACTION

1. This is a diversity action for breach of contract and fiduciary duty, and for equitable restitution in the alternative. Richards Aviation, Inc. of Tennessee ("Richards") and Harry Bernard Boldt, Jr. of Indiana ("Boldt")—the latter doing business in the name of a single-member limited liability company known as B2 Aviation LLC ("B2")—partnered for a joint venture (the "Venture") to provide private charter flights on a Bombardier Lear Jet 45 (the "Aircraft"). Subsequently, Boldt d/b/a B2 breached the joint venture agreement by failing to (a) contribute

necessary operating capital for the Venture and (b) maintaining the minimum liquidity required by the bank which had loaned the money for purchasing the Aircraft, which actions caused the Venture to default, causing Richards further economic injury in the form of a state-court judgment.[1]  Richards now seeks damages from Boldt and B2 for breach of contract, asks this Court to declare Boldt individually liable for the debts and obligations of B2, and in the alternative to damages, seeks an order of monetary restitution to make Richards and Boldt d/b/a B2's respective obligations under the state-court judgment correspond with these entities' respective ownership interests in the Venture.

## PARTIES

2. The Plaintiff, Richards Aviation, Inc. ("Richards"), is an active Tennessee corporation formed in 1981.

3. The Defendant, Harry Bernard Boldt, Jr. ("Boldt"), is an individual domiciled in Boone County, Indiana.  He may be served at his private residence located at 11555 Willow Springs Drive, Zionsville, Indiana 46077-7830.

4. The Defendant, B2 Aviation LLC ("B2"), is an Indiana limited-liability company formed in August 2010 and voluntarily dissolved in March 2018.  B2 may be served with process through its registered agent and sole member, Boldt, at 11555 Willow Springs Drive, Zionsville, Indiana 46077-7830.

---

[1] Initially, Boldt and B2 were also named as defendants in Cause CH-14-1463 in Part I of the Chancery Court for the Thirtieth Judicial District of Tennessee at Memphis, but they reached a private settlement with the state-court plaintiff.

5. Bolt was the sole member of B2. B2 operated out of Boldt's private residence and was woefully undercapitalized. Upon information and belief, Boldt intermingled B2 funds with his personal finances. Upon information and belief, Boldt used personal funds to pay B2's creditors.

6. For the reasons stated in the preceding paragraph, and upon further information and belief, Richards submits that B2 did not operate as a legitimate entity independent from the person of Boldt, but as an alter ego of Boldt. Therefore, Boldt should be found individually liable for the debts, claims, and obligations of B2.

## JURISDICTION & VENUE

7. This Court has original jurisdiction to hear this case under 28 U.S.C. § 1332(a).

8. This Court provides proper venue for this action under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

9. On August 24, 2010, Richards, B2, and Boldt (collectively, the "Venturers") executed a joint-venture agreement (the "Agreement"), memorializing the parties' respective rights and obligations under the Venture. Ex. A.

10. The Agreement described the Venture's purpose as "owning, renting, leasing, chartering, or otherwise operating the Aircraft, paying the expenses thereto, and utilizing the Aircraft in the private charter business." Ex. A at 1.

11. Richards owned one percent (1%) of the Venture and the Aircraft, Richards was allocated one percent (1%) of the profits, losses, and cash flow therefrom. Ex. A at 1, 4.

12. B2 owned ninety-nine percent (99%) of the Venture and the Aircraft, and B2 was allocated ninety-nine percent of the profits, losses, and cash flow therefrom. Ex. A at 1.

13. Richards's role in the venture was to operate, manage, and maintain the Aircraft and the related charter business. Ex. A at 1.

14. Specifically, Richards had "responsibility and authority" under the Venture to

> . . . .
>
> f. pay all expenses incurred in connection with the operation, repair[,] and maintenance of the Aircraft, including, without limitation, salaries and wages of pilots and crew members, hangar rent, parts, supplies, insurance premiums, principal and interest on indebtedness, licenses and fees, airport usage fees[,] and maintenance charges;
>
> g. pay any and all applicable sales, use, excise, franchise, fuel, income, property, and other taxes assessed or assessable against the said Aircraft (even though such Aircraft is co-owned by B2 and Richards), the Venture or any Aircraft owned by the Venture;
>
> . . . .
>
> l. distribute cash flow or other assets of the Venture in accordance with this agreement; and
>
> m. take such additional action not inconsistent with the foregoing that may be necessary or required to conduct the business of the Venture in the manner contemplated hereby.

Ex. A at 2.

15. B2's role in the venture was to provide the credit for financing the Aircraft's acquisition and the continuing capital necessary for the Aircraft's maintenance and operations.

16. B2 provided ninety-nine percent (99%) of the initial capital necessary for the Venture. Ex. A at 4.

17. The Agreement provided in pertinent part,

> Richards may, from time to time, determine that additional capital contributions are necessary to continue operating the Aircraft or conducting business of the Venture in the manner herein described. In such event, Richards shall give written or oral notice to B2 that additional capital is needed by the Venture, the amount o[f] such capital[,] and the reason therefor[]. Promptly upon receipt of such notice, B2 and Richards shall contribute to the Venture, in cash, Ninety-Nine percent (99%), and One percent (1%) respectively, the amount of such capital set forth in such notice.

Ex. A at 4.

18. The Agreement further provided,

> Each Venturer, upon the request of the other Venturer, agrees to perform all further acts and execute, acknowledge, and deliver any documents which may be reasonably necessary, appropriate, or desirable to carry out the provisions of this Agreement.

Ex. A at 8.

19. In 2010, Richards and B2 financed their acquisition of the Aircraft with a loan, secured by a promissory note and security agreement, from Regions Commercial Equipment Finance, LLC (the "Bank").

20. As a condition of the loan, the Bank required a continuing personal guaranty from Boldt.

21. Roughly two years into the Venture, the Bank allowed the Venturers to renegotiate the terms of their loan (the "Refinance").

22. The Venturers and the Bank executed an updated promissory note (the "Refi Note") on August 17, 2012. Ex. B.

23. The Refinance benefited the Venturers because the Refi Note allowed for lower capital payments than had been required under the original note from 2010.

24. As partial consideration for the Refinance, the Bank required Boldt, in his personal and individual capacity, to execute the Continuing Guaranty Agreement (the "Guaranty"). Ex. C.

25. Bold and the Bank properly executed the Guaranty on August 22, 2012.

26. The Guaranty obligated Boldt, *inter alia*, "to maintain access to no less than $1,000,000.00 of liquid assets at all times during the term of this Guaranty." Ex. C at 2.

27. The term of the Guaranty was substantially coextensive with the term of the Refi Note.

28. Prior to and initially following the Refinance, Boldt d/b/a B2 would transfer funds by wire into a designated Richards account no later than the twenty-fifth (25th) day of each month. Consistent with the Agreement, the amount so transferred would equal B2's pro-rata share of both the Venture's monthly (a) loan payment and (b) operating expenses.

29. In tandem with the Venturers' forgoing arrangement, with authorization, the Bank would each month withdraw its portion of the transferred funds from Richards's designated account. Richards would then apply the remaining funds toward the Venture's monthly operating expenses.

30. On April 25, 2013, Boldt d/b/a B2 failed to remit the full amount due under the April 2013 capital call.

31. Following April 2013, Boldt d/b/a B2 regularly and continually failed to satisfy its portion of the Venture's monthly capital calls. An accounting of the amounts due and owing under these capital calls is attached hereto as Exhibit D.

32. Boldt d/b/a B2's failure to satisfy its financial obligations under the agreement imposed significant financial hardships on the Venture and Richards. Venture operations suffered, and Richards incurred significant debt in order to keep the Aircraft and related operations in compliance with the safety regulations of the Federal Aviation Administration.

33. Upon information and belief, sometime in the months following April 2013, Boldt privately met with representatives from the Bank and arranged to make direct payments to the Bank for Boldt's obligations under the Personal Guaranty. These arrangements were independent of the Venture and, upon information and belief, in contravention of the Agreement.

34. Boldt soon began making monthly payments directly to the Bank and remitting no money whatsoever to Richards or the Venture.

35. Upon information and belief, some time prior to March 31, 2014, Boldt informed the Bank that he was unable to maintain the minimum liquidity required under the Guaranty.

36. Boldt's failure to fulfill its obligations to Richards under the Agreement left Richards unable to fulfil its own responsibilities under the Agreement, including debts to vendors and other creditors, and left Richards without money to pay its employees.

37. Richards was left with no reasonable alternative but to record a lien against the Aircraft.

38. On March 31, 2014, left with no reasonable alternative, Richards recorded a lien against the Aircraft, although this action was in violation of the security agreement, concerning the Aircraft, which document had been executed contemporaneously with the Note.

39. Richards's recording a lien against the Aircraft, in violation of the security agreement, and Boldt's failure to maintain the minimum liquidity required under the Guaranty prompted the Bank to accelerate the Note on or around July 30, 2014.

40. When Richards, B2, and Boldt failed to satisfy the accelerated demand, the Bank sued these entities for the balance of the Note. Ex. E.

41. The Complaint in Shelby County Chancery Cause CH-14-1463 cites both Richards's recording of the lien and Boldt's failure to maintain the requisite liquidity as instances of default. Ex. E at 6.

42. The Bank successfully prosecuted its Complaint in state court, and on December 2, 2019, judgment in Shelby County Chancery Cause CH-14-1463 was entered against Richards in the amount of $4,071,626.77, which amount represented principal and interest due and owing under the Note. Ex. F.

### COUNT I:   BREACH OF CONTRACT

43. All preceding facts and allegations are hereby reiterated and incorporated by reference as if fully set forth under this count.

44. The Agreement was and is a valid, enforceable contract between Richards and Boldt d/b/a B2.

45. Richards fulfilled its management obligations under the Agreement so long as Boldt d/b/a B2 was fulfilling its obligations.

46. Boldt d/b/a B2 breached the Agreement by failing to remit payment in satisfaction of the Venture's capital calls.

47. Monies remain due and owing to Richards under the capital calls.

48. As a result of Boldt d/b/a B2's failure to satisfy the Venture's capital calls, Richards incurred significant debt in an amount approximately equal to B2's total deficiency, in order to maintain safe operation of the Aircraft.

49. Furthermore Boldt d/b/a B2's


### COUNT II:   BREACH OF CONTRACT

50. All preceding facts and allegations are hereby reiterated and incorporated by reference as if fully set forth under this count.

51. As executed, the Guaranty was a valid, enforceable contract of guaranty between Boldt, in his personal, individual capacity, and the Bank.

52. Because the Guaranty was a condition of the Refinance and the Refinance was to benefit the Venture, Richards, being a constituent of the Venture, was an intended beneficiary of the Personal Guaranty.

53. As an intended beneficiary of the Personal Guaranty, Richards may seek relief for financial injury it sustained as a result of Boldt's breach of the Personal Guaranty.

54. Boldt breached the Personal Guaranty when he failed to maintain the minimum liquidity required thereunder.

55. The Bank's acceleration of the Note was the proximate result of Boldt's breaching of the Personal Guaranty, as was the lawsuit that followed.

56. Boldt is therefore liable to Richards for the amount of the Bank's judgment, which was precipitated by Boldt's breach of the Guaranty

### COUNT III: BREACH OF FIDUCIARY DUTY

57. All preceding facts and allegations are hereby reiterated and incorporated by reference as if fully set forth under this count.

58. Boldt's making direct payments to the Bank represented his deliberate prioritization of his obligations to the Bank under the Personal Guaranty over his fiduciary duties to Richards and the Venture under the Agreement.

59. Richards suffered significant financial injury as a result of Boldt's breach as set forth under this count.

## COUNT IV: RESTITUTION

60. All preceding facts and allegations are hereby reiterated and incorporated by reference as if fully set forth under this count.

61. Under the terms of the Agreement, Boldt d/b/a owned ninety-nine percent (99%) of both the Venture and the Aircraft.

62. Had the Venture proved profitable, Boldt d/b/a B2 would have been entitled to ninety-nine percent (99%) of those profits.

63. Given Boldt d/b/a B2's lion's share allocation of ownership and profit rights of and under the Venture, it would be fundamentally unjust and inequitable to allow Boldt d/b/a B2 to shirk liability for less than the same share of liability under the Note.

64. Equity therefore demands Boldt be required to pay restitution to Richards in an amount sufficient to cover ninety-nine percent (99%) of the amount of the judgment against Richards under the Note.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Richards Aviation, Inc., requests the following relief:

1. That proper process issue and be served upon the Defendants;

2. That the Defendants be required to Answer or otherwise respond to this Complaint in the time and manner prescribed by law;

3. That a jury be empaneled to hear and decide the truth of allegations in dispute;

4. That this Court enter judgment in favor of the Plaintiff and against the Defendants:

    (a) Declaring Boldt personally and individually liable for B2's obligations under the Agreement;

    (b) Awarding monetary judgment in favor of Richards and against Boldt, B2, or both in the amount of $667,268.84, representing the debt incurred by Richards in the operation of the Venture as a result of Boldt d/b/a B2's breach of the Agreement;

    (c) Awarding monetary judgment in favor of Richards and against Boldt in the amount of $4,071,626.77, representing the Bank's state-court judgment against Richards;

    (d) Declaring B2, Boldt, or both to be liable, both under the Agreement and at equity, for ninety-nine percent (99%) of the total deficiency under the Note; and

5. For such other and further relief to as may be deemed just and proper.

                          Respectfully submitted,

                          /s/ Jacob Webster Brown
                          Bruce S. Kramer (TN 7472)
                          Jacob Webster Brown (TN 36404)
                          APPERSON CRUMP, PLC
                          6070 Poplar Avenue, 6th Floor
                          Memphis, Tennessee 38119
                          Telephone:  (901) 756-6300
                          Facsimile:  (901) 757-1296
                          bkramer@appersoncrump.com
                          jbrown@appersoncrump.com
                          *Attorneys for Plaintiff*